# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DWAYNE POSTELL**                                      **CIVIL ACTION**

**VERSUS**

**GERALD LANE, ET AL.**                          **NO.: 12-00527-BAJ-SCR**

## RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 72)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Dwayne Postell's ("Postell") claims. Postell opposes the motion. (Doc. 75.) Defendants filed a reply memorandum. (Doc. 83.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A. Postell's Complaint[2]

Postell filed this employment discrimination lawsuit pursuant to Title VII of the

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 52.)

[2] Postell originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc. (Doc. 1.) Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint. (Doc. 4.) Accordingly, Postell filed his amended Complaint on September 11, 2012. (Doc. 6.)

Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3] Postell alleges that Defendants discriminated against him on the basis of his national origin, race, and sex. Specifically, Postell alleges that dealership owner, Gerald R. Lane ("Lane"), and his assistant, Wayne Garafola ("Garafola"), created a hostile work environment in which Postell was subjected to discriminatory comments, name-calling, abusive language, intimidation, lewd comments, and unwelcome physical contact. According to Postell, Defendants also retaliated against him in response to his complaints of unlawful discrimination. Postell's Complaint also alleges that Defendants actions amounted to intentional infliction of emotional distress. Postell further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ. Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

## B.     Undisputed Facts[4]

- Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 death, Lane owned a majority interest in Gerry Lane Enterprises.

- Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports.

---

[3] A previous ruling by this Court indicated that Postell also asserted a claim under 42 U.S.C. § 1981. (Doc. 102, p. 1.) However, a review of Postell's Complaint reveals that he seeks damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981.

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1. In opposition, Postell submitted a response to Defendants' statement of undisputed material facts. (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- Sales managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American), and JK Khamiss (Middle-Eastern) reported to sales manager, Reynold Ankeny (Caucasian) and directly supervised the sales force.

- The sales force is typically comprised of twenty to thirty individuals.

- During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force was African-American.

- Postell was born in Gainesville, Florida and lived in Florida and Georgia before moving to Baton Rouge in 1998.

- Postell is African-American.

- On to May 4, 2004, Postell began working for Gerry Lane Enterprises as a sales representative.

- Prior May 2004, Postell had never worked in automotive sales.

- Like all employees, Postell received an initial orientation at the time of his hire.

- As part of this process, he received various policies governing the terms of his employment.

- In these materials, harassment is discussed in detail and strictly prohibited by anyone in the workplace.

- Postell received updated versions of these materials in 2007.

- Diane Trask, Avery Stokes, and Kendrick Thomas, all of whom are African-American, were generally the top sales representatives according to Postell.

- Mr. Lane had strict rules at the Dealership throughout Postell's term of employment; for instance, sales representatives were: (1) required to wear a shirt and tie and be clean-shaven; (2) not allowed to congregate; (3) not allowed to park outside of designated areas and (4) required to be at the daily sales meetings on time.

- On April 24, 2012, opposing counsel sent a letter to the Company and Mr. Lane indicating that Postell intended to pursue legal claims for harassment and discrimination.

- In a written memorandum provided by Terry Bell (the individual responsible for

handling human resources for Gerry Lane Enterprises), he instructed Postell to report any retaliation to him.

- Michelle Rhodes (an employee who worked in the service department) alleged that Postell referred to her as an "ass" to a customer when dealing with an issue regarding a tire warranty.

- This incident was investigated by Steve Worth, the then new human resources representative.

- Following the completion of the investigation, Postell was suspended for three days beginning on April 10, 2013.

- The Dealership has hired numerous African-Americans to work in sales since Postell's separation.

- Postell usually worked the "Angola Rodeo" at the Louisiana State Penitentiary for a single weekend in April, and on four Sundays in October, principally selling programs and running errands.

- For this work, Postell was paid $10.00 per hour and interacted with prison employees, which could generate sales leads.

- Postell was provided two free tickets for each session. Some time in 2011, he sold his tickets to the rodeo to an individual who came to the Dealership looking for free tickets.

- When management learned of his actions, Postell was immediately told that such conduct was improper, and he was required to turn in the proceeds from the sale of the tickets.

- Postell cannot establish that Gerry Lane Enterprises failed to pay him any wages or other sums due at termination in violation of Louisiana law.

## C. Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing Postell's claims. Defendants contend that Postell is precluded from asserting federal or state law discrimination claims against individual supervisors. Defendants further argue that Postell cannot point to sufficient evidence to establish his discrimination

claims on the basis of his sex, national origin, or race. Defendants also contend that Postell cannot point to sufficient evidence to establish his retaliation, intentional infliction of emotional distress, or assault and battery, or unpaid wages claims. Accordingly, Defendants argue that summary judgment is warranted.

Postell concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. Postell further concedes that he cannot point to sufficient evidence to establish his unpaid wages claims. He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, Postell contends that there are genuine disputes of material fact related to his race and sex discrimination claims, as well as his retaliation, intentional infliction of emotional distress, and assault and battery claims. Accordingly, Postell contends that Defendants' motion must be denied. Postell does not make any specific arguments related to his national origin discrimination claim.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III.   Analysis

As an initial matter, as noted above, Postell concedes that he cannot point to sufficient evidence to establish his unpaid wages claim. Accordingly, Defendants' request that the Court dismiss Postell's unpaid wages claim is **GRANTED**.

### A.   Postell's Federal and State Law Discrimination Claims Against Individual Supervisors or Fellow Employees

In support of the motion, Defendants contend that Postell is precluded from asserting federal or state law discrimination claims against individual supervisors. Rather, relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer.  Postell failed to present any argument, or point to any evidence, in opposition to Defendants' argument.

It is well established that relief under Title VII is only available against an employer, and not against an individual supervisor or fellow employee.  *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012) (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003)).  It is also well established that "[L]ouisiana's antidiscrimination law provides no cause of action against individual employees, only against employers." *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *Johnson v. Acosta*, No. 10-1756, 2010 U.S. Dist. LEXIS 109032, at *15 (E.D. La. Oct. 12, 2010) ("It is equally well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.'"); *see also* La. R.S. 23:303(A).  Accordingly, Defendants' request that the Court dismiss Postell's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or

fellow employee, is **GRANTED**.

## B. Postell's Hostile Work Environment Claim on the Basis of His Sex[5]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Such a violation occurs when the plaintiff establishes (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Here, Defendants contend that Postell cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964."). Accordingly, Postell's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

U.S. at 67).  For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).  Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive.  *Harris*, 510 U.S. at 21-22.  To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance.  *Id.* at 23.

In opposition to the motion, Postell contends that he was subjected to sexual harassment by Lane *and* Garafola.  A review of Postell's Complaint reveals his allegation that Lane "personally places his hands on employees and invades their personal space and has tap[ped] employees on the buttocks and genitalia." (Doc. 6, p. 5.)  Noticeably absent from his Complaint, however, are any allegations related to Garafola's actions.

In his Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, Postell alleged that Garafola "subjects me and some of the other men to regular homosexual advances, innuendo and jokes that create an extremely uncomfortable work environment." (Doc. 6-1, p. 2.)  However, as noted in the Court's

9

previous Ruling and Order, Postell failed to identify Garafolo in his Complaint. (Doc. 102, p. 5.) Further, Postell failed to allege any facts that would support a claim for sexual harassment, based on Garafola's actions. (Doc. 6.) Indeed, the only sexual harassment allegations contained in his Complaint are based on alleged actions of Lane. (Doc. 6, pp. 4-5.) Postell failed to cite, nor has the Court identified, any binding case law that would permit the Court to consider factual allegations that are *not* contained in his Complaint, and thus, not before the Court. Accordingly, the Court shall limit its analysis to Postell's sexual harassment claim on the basis of Lane's actions.

In opposition to the motion, Postell contends that Lane "tapped" him in his genital area. In support of this contention, Postell points to his deposition, in which he testified that Lane "sac-tapped" him in the genital area once. (Doc. 76-1, p. 76.) According to Postell, he "doubled over." (Doc. 76-1, p. 76.) From that point forward, Postell was "on the lookout" for Lane each time Lane "tr[ied] to sac-tap [him]." (Doc. 76-1, p. 76.) It is not clear from Postell's testimony how many times he alleges Lane attempted to touch his genitals. Postell also contends that Lane inappropriately touched him on his buttocks. However, Postell failed to point the Court to any evidence to support this contention. Postell failed to point to any other evidence in support of his sexual harassment claim.

Simply put, Postell has failed to point to sufficient evidence from which a jury could conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Even viewing the facts in the

light most favorable to Postell, Lane's act simply does not approach the level of severe and pervasive conduct that would "destroy [Postell's] opportunity to succeed in the workplace." *Shepard v. Comptroller of Public Accounts of State of Tx.*, 168 F.3d 871, 874-75 (5th Cir. 1999) (evidence that a co-worker had made several sexually suggestive comments, often tried to look down the plaintiff's clothing, touched and rubbed the plaintiff's arm, and twice invited her to sit on his lap during office meetings was not sufficiently severe to be actionable under Title VII). Indeed, when compared to cases in which courts in this Circuit have denied summary judgment or afforded relief, Lane's actions were simply not frequent or serious enough to alter the conditions of Postell's employment. *Compare Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands did not qualify as a hostile work environment), *with Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment). Accordingly, Defendants' request that the Court dismiss Postell's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

### C. Postell's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination

creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in

a Title VII trial must carry the initial burden under the statute of establishing a prima

facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a

member of a protected class; (2) he was subjected to unwelcome harassment; (3) the

harassment complained of was based on race; (4) the harassment complained of

affected a term, condition, or privilege of employment; (5) the employer knew or

should have known of the harassment in question and failed to take prompt remedial

action.[6] *Ramsey*, 286 F.3d at 268. Here, Defendants argue that Postell cannot point

to sufficient evidence to establish that the harassment complained of was based on

race, or that it affected a term, condition or privilege of his employment.

In opposition, Postell argues that Lane subjected him to unwelcome harassment

on the basis of his race that was severe and pervasive. In support of this contention,

Postell points to his deposition, in which he testified he heard Lane tell African

American sales employees, "This is my plantation. That's my fucking cotton. Now go

out there and pick it." (Doc. 76-1, p. 53); told African American sales employees, "I ain't

no damn FEMA ticket." (Doc. 76-1, p. 60); compared African American sales employees

to the low income, predominately African American neighborhood behind the

dealership, which he referred to as the "ghetto" (Doc. 76-1, pp. 60-61); yelled at Postell

to "go tell them goddamn monkeys to get out from under those trees and go sell some

_____

[6] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

fucking cars." in reference to a group of predominately African American sales employees (Doc. 76-1, p. 31); exclaimed that the six African American high school students who were charged with attempted murder after assaulting a white high school student in a racially-charged criminal case in Jena, Louisiana (commonly referred to as the "Jena Six") "should be hung from the trees" (Doc. 76-1, p. 35); referred to an African American employee's Native American heritage as being from the "nigga-ho tribe" in a sales meeting ((Doc. 76-1, pp. 33, 53); and subjected him and other African American employees to "face checks" to ensure they were clean shaven, but did not subject white employees to such checks (Doc. 76-1, p. 17-20). According to Postell, Lane frequently made race-based comments:

> A:     . . . if he didn't say something once a day, it was once every other day. If he didn't say it every other day, he said it once a week. Mr. Lane was saying - it is easier to tell you what he didn't say than what he did say.

(Doc. 76-1, p. 53.)

Viewing the facts in the light most favorable to Postell, the Court finds that he has presented sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that the harassment complained of was based on race. Such a conclusion is underscored by the deposition testimony of Postell's white co-worker, who testified that he "never heard [Lane] talk to the white salespeople like the black salespeople. Definitely. He never said the same things to us that he would say to the others." (Doc. 76-16, p. 3.)

Viewing the facts in the light most favorable to Postell, the Court also finds that he has presented sufficient evidence to establish a dispute of material fact from which

a jury could conclude that the harassment was severe and pervasive. Indeed, the evidence presented by Postell suggests more than just a handful of racially-charged comments. Rather, the evidence presented supports the conclusion that Lane subjected Postell to race-based insults, ridicule, and intimidation on a regular basis. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.").

Further, where, as here, the plaintiff has presented evidence of a pattern of race-based harassment, it is appropriate for the Court to consider incidents of non-race-based harassment. *Compare WC&M Enters, Inc.*, 496 F.3d at 400 (determining that a fact finder could reasonably conclude that a co-worker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because the same co-worker had repeatedly called the plaintiff "Arab" for approximately one year), *with Hernandez*, 670 F.3d at 654 (declining to consider incidents of harassment not based on race where there was no evidence that the conduct was part of a pattern of race-based harassment). The Court finds that when evidence of Lane's race-based harassment of Postell is taken together with evidence of the non-race-based harassment, it is reasonable to conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of Postell's employment. Accordingly, Defendants' request that the Court dismiss Postell's hostile work environment claim on the basis of his race is **DENIED**.

### D. Postell's Hostile Work Environment Claim on the Basis of His National Origin

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment. To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7] *Ramsey*, 286 F.3d at 268 (citations omitted). Here, Defendants contend that Postell failed to allege a separate and distinct national origin discrimination claim. Postell failed to present any argument or evidence in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973). Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

Nothing in the record suggests that Postell's national origin is *not* American.

---

[7] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

Indeed, Postell failed to present any evidence regarding his or his ancestor's place of origin. Rather, when questioned about his national origin claim, Postell testified as follows:

> Q: African American, right?
>
> A: I'm American. I'm black.
>
> Q: Okay. But you - the claims you're bringing in this case is you're saying that you were harassed and discriminated against because of your race and your national origin, African American. Is that - is that your understanding of what you're suing us for?
>
> A: Yes, right.

(Doc. 76-1, p. 56.)

Accordingly, the Court finds that Postell's national origin discrimination claim is not a separate and distinct claim. As such, an analysis of Postell's national origin claim would merely duplicate the Court's analysis of his race claim. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and racial discrimination are "so closely related . . . as to be indistinguishable.") When viewing the facts, it is clear that Postell is alleging race discrimination, and that his claim of discrimination on the basis of national origin is superfluous. Accordingly, Defendants' request that the Court dismiss Postell's claim that he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### E. Postell's Retaliation Claim

Title VII contains an anti-retaliation provision that "prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII." *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 56 (2006) (internal quotations, citation, and alterations omitted); 42 U.S.C. § 2000e-3(a). A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). Here, Defendants argue that Postell cannot point to sufficient evidence to establish that an adverse employment action occurred or a causal link between the protected activity and the adverse employment action. An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White v.* 548 U.S. 53, 68 (2006); *Hernandez*, 670 F.3d at 657.

In opposition, Postell contends that Defendants retaliated against him when they prohibited him from working the October 2012 "Angola Rodeo" at the Louisiana State Penitentiary. According to Postell, he earned $10 per hour while working the "Angola Rodeo." (Doc. 76-1, pp. 3-6.) Working at the "Angola Rodeo" also gave Postell the opportunity to network with correctional officers, which often led to sales leads and a commission. (Doc. 76-1, pp. 3-6.) According to Postell, Defendants prohibited him from working the rodeo after he filed the instant lawsuit.

Postell also contends that Defendants retaliated against him when the Company disciplined him for an alleged attendance violation, suspended him for referring to a

co-worker as an "ass" to a customer, and terminated him after he had a physical altercation with another a co-worker. According to Postell, he worked for the Company for nine years without incident. Yet, within months of filing the instant lawsuit, he was disciplined multiple times and was eventually terminated from his sales position.

Because Postell does not present any direct evidence of retaliation, his retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 607-08 (5th Cir. 2005) (applying the *McDonnell Douglas* framework in a Title VII retaliation case). The *McDonnell Douglas* framework requires a plaintiff first to demonstrate a prima facie case of retaliation. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire*, 480 F.3d at 388-89 (citation omitted).

Viewing the facts in the light most favorable to Postell, the Court finds that he has established a prima facie case of retaliation. Accordingly, the burden shifts to Defendants to state a legitimate, non-retaliatory reason for the Company's decision. In an attempt to establish a legitimate, non-retaliatory reason for prohibiting Postell from working the "Angola Rodeo," Defendants contend that Postell was prohibited from working the rodeo because he sold two rodeo tickets that the Company gave him free-of-charge, without the Company's authorization. A review of Postell's deposition,

however, raises a dispute of fact as to exactly when the Company became aware of the sale, and whether Postell was permitted to work the April 2012 "Angola Rodeo" after the Company became aware. Accordingly, the Court finds that Defendants have not met their burden.

As it relates to the suspension and eventual termination of Postell, Defendants contend that there is no dispute that Postell violated Company policy, that investigations were conducted, and that Postell was provided with reprimand forms, which he signed. Defendants also contend that Postell cannot point to similarly situated employees who were treated differently. In opposition, Postell points to his deposition, in which he testified about coworkers who violated Company policy and/or engaged in physical altercations at the dealership, but were not terminated. (Doc. 72-6, pp. 105-109.) Viewing the facts in the light most favorable to Postell, the Court finds that there are genuine disputes of fact as to whether Postell's suspension and eventual termination were the result of discriminatory animus.

In sum, the Court finds that Postell has pointed to sufficient evidence to establish a dispute of material fact as to his retaliation claim. Accordingly, Defendants' request that the Court dismiss Postell's retaliation claim is **DENIED**.

### F.     Postell's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's

intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

In support of the motion, Defendants argue that Postell cannot point to sufficient evidence to establish his assault and battery claims. In opposition, Postell contends that Lane intended to touch him on his face and buttocks, and that the touching was unwanted. In support of this contention, Postell points to his deposition in which he testified that Lane touched his face "two or three times" and that he "didn't like it." (Doc. 76-1, pp. 17-18.) Postell failed to point the Court to the specific portion of his deposition in which he testified that Lane touched his buttocks.

In support of the motion, Defendants argue that Postell cannot point to sufficient evidence to establish that Lane intended to make a harmful or offensive contact. Thus, Defendants argue Postell's battery claim must be dismissed. However, the actor need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949). Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The actor may be liable although intending nothing more than a good-natured practical joke, or honestly

believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391.

Viewing the facts in the light most favorable to Postell, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed. Accordingly, Defendants request that the Court dismiss Postell's battery claim must be denied.

As it relates to his assault claim, Postell must establish three elements: (1) "an intent to scare mental element"; (2) "conduct by defendant of the sort to arouse reasonable apprehension of bodily harm"; and (3) "the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So.2d 1092 (La. App. 5th Cir. 1987). Here, Postell failed to address, let alone present any evidence to establish these elements. As such, Defendants' request that the Court dismiss Postell's assault claim must be granted.

Accordingly, Defendants' request that the Court dismiss Postell's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

### G. Postell's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion,

Defendants argue that Postell cannot point to sufficient evidence to establish these elements.

In opposition, Postell failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, Postell generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, Postell's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Lane's conduct was extreme and outrageous, Postell has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Lane desired to inflict severe emotional distress upon Postell or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward Postell. Accordingly, the Court finds that Postell has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Lane is liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Postell's intentional infliction of emotional distress claim is **GRANTED**.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 72)** is **GRANTED IN PART** and **DENIED IN PART**.

•    Defendants' request that the Court dismiss Postell's claim under La. R.S. §

23:631 is **GRANTED**. Accordingly, Postell's claim under La. R.S. § 23:631 is **DISMISSED**.

- Defendants' request that the Court dismiss Postell's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, is **GRANTED**. Accordingly, Postell's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

- Defendants' request that the Court dismiss Postell's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, Postell's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Postell's hostile work environment claim on the basis of his race is **DENIED**.

- Defendants' request that the Court dismiss Postell's hostile work environment claim on the basis of his national origin is **GRANTED**. Accordingly, Postell's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss Postell's retaliation claim is **DENIED**.

- Defendants' request that the Court dismiss Postell's battery claim is **DENIED**.

- Defendants' request that the Court dismiss Postell's assault claim is **GRANTED**. Accordingly, Postell's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss Postell's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Postell's intentional infliction of emotional distress claim is **DISMISSED**.

Baton Rouge, Louisiana, this _30th_ day of September, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**